## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL H. HOLLAND, JOSEPH R.
RESCHINI, and CARLO TARLEY, as
Trustees of the UNITED MINE WORKERS
OF AMERICA 1992 BENEFIT PLAN,
2121 K Street, N.W.
Suite 350
Washington D.C. 20037

                    Plaintiffs,

v.

CONSOL ENERGY INC.                          Case No. 1:20-cv-1148
1000 Consol Energy Drive
Canonsburg, PA 15317

and

CNX RESOURCES CORPORATION
1000 Consol Energy Drive, Suite 400
Canonsburg, PA 15317

                    Defendants.

## **COMPLAINT**

1.      This is a civil action brought by an employee benefit plan for declaratory judgment

pursuant to 28 U.S.C. § 2201, for the purpose of determining a question in actual controversy

between the parties, as to Defendants Consol Energy Inc.'s ("Consol") and CNX Resources

Corporation's ("CNX") obligations under Sections 9711 and 9712 of the Coal Industry Retiree

Health Benefit Act of 1992, *as amended* (the "Coal Act"), 26 U.S.C. §§ 9711, 9712. Consol and

CNX have repeatedly filed public statements with the Securities and Exchange Commission

acknowledging potential liability under the Coal Act to provide health benefits to eligible retirees

and their dependents.  Nonetheless in such filings and other public statements, Consol and CNX

have refused to acknowledge that such liability or obligation to make payments exists. This action seeks a declaration confirming that liability.

The Parties

2.       Plaintiffs, Michael H. Holland, Joseph R. Reschini and Carlo Tarley are Trustees of the United Mine Workers of America 1992 Benefit Plan (the "1992 Plan"). The Trustees are fiduciaries with respect to the 1992 Plan within the meaning of Section 3(21)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(21)(A). The Trustees conduct the business of the 1992 Plan at 2121 K Street, N.W., Washington, D.C. 20037.

3.       The 1992 Plan is an irrevocable trust fund created pursuant to Section 9712 of the Coal Act, 26 U.S.C. § 9712.

4.       The 1992 Plan is a plan described in Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5); an employee welfare benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3); and a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

5.       CNX was originally incorporated in Delaware in 1991 under the name Consol Energy Inc. (for purposes of clarity the name "CNX" will be used throughout to refer to the corporate entity originally called Consol Energy Inc. that was later renamed CNX Resources Corporation). CNX was the parent company of Consol Mining Corp. On or about November 28, 2017, CNX Resources Corporation was renamed from Consol Energy, Inc. to CNX Resources Corporation after spinning-off Consol Mining Corp. Consol Mining Corp.'s name was changed to Consol Energy Inc. (for purposes of clarity, the name "Consol" will be used to refer to the corporate entity Consol Mining Corp. that was later renamed Consol Energy Inc.).

2

6.    Defendant CNX is a Delaware corporation, with an office and/or address at 1000 Consol Energy Drive, Suite 400, Canonsburg, PA 15317.

7.    Defendant Consol is a Delaware corporation, with an office and/or address at 1000 Consol Energy Drive, Canonsburg, PA 15317.

8.    Jurisdiction is conferred on this Court by Section 9721 of the Coal Act, 26 U.S.C. § 9721; Section 4301(c) of ERISA, 29 U.S.C. § 1451(c); and Section 502(e) of ERISA, 29 U.S.C. § 1132(e).

9.    Venue is proper in this district under Section 9721 of the Coal Act, 26 U.S.C. § 9721; Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2); and Section 4301(d) of ERISA, 29 U.S.C. § 1451(d), in that Plaintiff 1992 Plan is administered in the District of Columbia.

<u>The Coal Act</u>

10.    The Coal Act established a unique health benefit program, which Congress devised in the early 1990s to ensure that retired coal miners continue to receive the benefits promised them. A critical element of the Coal Act's statutory scheme is Section 9711, which requires coal companies that were providing health benefits to retirees as of February 1, 1993, pursuant to the 1978 or later National Bituminous Coal Wage Agreement ("NBCWA"), to:

> continue to provide health benefits to such individuals and the individual's eligible beneficiaries which is substantially the same as (and subject to the all the limitations of) the coverage provided by such plan as of January 1, 1992. Such coverage shall continue to be provided for as long as the last signatory operator (and any related person) remains in business.

26 U.S.C. § 9711(a).

11.    Section 9711 also provides for the coverage of specified additional eligible retirees, *i.e.,* - those who met the age and service requirements as of February 1, 1993 and who retired from the coal industry by September 30, 1994. 26 U.S.C. § 9711(b)(1). The last signatory employer

must provide "health benefits coverage to such individuals and the individual's eligible beneficiaries." 26 U.S.C. § 9711(b).

12. The individual coal companies subject to Section 9711 provide these benefits through what are called individual employer plans ("IEPs" or "Section 9711 plans").

13. Pursuant to Coal Act Section 9711(c)(1), each "related person" to the responsible individual coal company is "jointly and severally liable" for the provision of healthcare coverage required under Section 9711.  26 U.S.C. § 9711(c)(1).

14. The 1992 Plan provides benefits for those who are eligible for coverage from their last signatory employer under Coal Act Section 9711, but who do not receive the required coverage. 26 U.S.C. § 9712 (a), (b).

15. Section 9712(d)(1)(A) of the Coal Act requires that each last signatory employer pay premiums to the 1992 Plan for each beneficiary of the Plan attributable to the employer. 26 U.S.C. § 9712(d)(1)(A).

16. Section 9712(d)(1)(B) of the Coal Act provides that each 1988 last signatory operator is responsible for the "provision of a security (in the form of a bond, letter of credit, or cash escrow) in an amount equal to a portion of the projected future cost to the [1992 Plan] of providing health benefits for eligible and potentially eligible beneficiaries attributable to the 1988 last signatory operator." 26 U.S.C. § 9712(d)((1)(B).

17. The security requirement provides limited protection to the 1992 Plan in the event a last signatory operator defaults on its obligations to maintain its Section 9711 plan.

18. Section 9712(d)(4) of the Coal Act provides that each related person to a last signatory operator is jointly and severally liable for all of the operator's financial obligations to the 1992 Plan.

**Defendants' Coal Act Obligations**

19.     Either directly or indirectly, CNX owned 100% of a number of subsidiaries (the "Signatory Subsidiaries") that were signatory to a series of National Bituminous Coal Wage Agreements ("NBCWAs") negotiated between the United Mine Workers of America ("UMWA") and the Bituminous Coal Operators' Association, Inc. ("BCOA"), an employer association of which the Signatory Subsidiaries were members.

20.     Upon information and belief, Consol was either a wholly-owned subsidiary of CNX as of July 20, 1992, and directly or indirectly owned 100% of the Signatory Subsidiaries or was created out of the assets of CNX as part of a corporate restructuring, so that, in either case, it is a member of the same controlled group of corporations as the Signatory Subsidiaries that were signatory to a series of NBCWAs negotiated by the UMWA and the BCOA, of which the Signatory Subsidiaries were members.

21.     Included among these 100%-owned Signatory Subsidiaries of CNX were Consolidation Coal Company, McElroy Coal Company, Southern Ohio Coal Company, Central Ohio Coal Company, Keystone Coal Mining Corp. and Eighty-Four Mining Company, each of which was signatory to the 1988 NBCWA.

22.     The Signatory Subsidiaries are "Last Signatory Operators" as that term is defined in the Coal Act. 26 U.S.C. § 9701(c)(4).

23.     Consol and CNX are each "related persons" to the Signatory Subsidiaries as that term is defined in the Coal Act. 26 U.S.C. § 9701(c).

24.     Section 9711 of the Coal Act requires Consol and CNX, as jointly and severally liable "related persons," to continue providing health benefits at specified benefit levels through a Section 9711 plan for individuals who were receiving retiree health benefits as of February 1,

1993, and to provide benefits to those individuals who were age and service eligible to receive benefits under its plan as of February 1, 1993, and who retired prior to October 1, 1994, and to continue providing such coverage for as long as it or any "related person" remains "in business" within the meaning of the Coal Act.

25.     Consistent with their obligation under the Coal Act, CNX and/or Consol maintained a Section 9711 Plan for eligible retirees and beneficiaries of Consolidation Coal Company, McElroy Coal Company, Southern Ohio Coal Company, Central Ohio Coal Company, Keystone Coal Mining Corp. and Eighty-Four Mining Company from the inception of their Coal Act obligation through December 2013.

26.     On December 5, 2013, CNX sold Consolidation Coal Company, McElroy Coal Company, Southern Ohio Coal Company, Central Ohio Coal Company, Keystone Coal Mining Corp. and Eighty-Four Mining Company (hereinafter the "Sold Subsidiaries") to Ohio Valley Resources, Inc., a wholly owned subsidiary of Murray Energy Corporation ("Murray Energy"), through a stock purchase agreement.

27.     As a result of that transaction, Murray Energy provided benefits to eligible retirees of the Sold Subsidiaries and their beneficiaries as required by the Coal Act and the stock purchase agreement through its own Section 9711 plan, notwithstanding the fact CNX and Consol retained their independent joint and several obligations to continue providing such benefits as "related persons" to the Sold Subsidiaries.

28.     Defendants CNX and Consol also retained their joint and several obligation under the Coal Act to continue providing such benefits as "related persons" to the Sold Subsidiaries following Consol's November 28, 2017 spin-off from CNX.

29.     Murray Energy and 98 affiliated debtors filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code on October 29, 2019.

30.     During the pendency of the bankruptcy proceeding, in light of declining liquidity and the demands of the prospective purchaser of its assets, Murray Energy undertook an effort to terminate its statutory Coal Act obligations. It did so through negotiations with an Official Committee of Retirees appointed pursuant to Section 1114 of the Bankruptcy Code ("Retiree Committee") and also involving the 1992 Plan. These negotiations resulted in a settlement agreement dated April 14, 2020, to transfer the retirees in the Murray Energy Section 9711 plan, including eligible beneficiaries of the Sold Subsidiaries, to the 1992 Plan.

31.     Pursuant to Bankruptcy Rule 9019, the bankruptcy court entered an order on April 30, 2020, approving the settlement agreement, pursuant to which the 1992 Plan was required to enroll Murray Energy's Coal Act retirees and beneficiaries, including the retirees and beneficiaries of the Sold Subsidiaries, effective May 1, 2020.

32.     As of May 1, 2020, the 1992 Plan has enrolled the Murray Energy retirees and other beneficiaries, including the eligible retirees and beneficiaries of the Sold Subsidiaries, without a lapse in benefits.

33.     According to the 1992 Plan's records, a reasonable estimate of the beneficiaries attributable to Consol and CNX through the Sold Subsidiaries is 2,159 beneficiaries.

## COUNT I

### For a Declaration that Consol and CNX Are Obligated to Provide Benefits to Retirees of the Sold Subsidiaries under Section 9711 of the Coal Act

34.     The allegations in paragraphs 1 – 33 are reasserted as if fully rewritten.

35.     In enacting the Coal Act, Congress announced an unequivocal mandate that responsible employers provide the required benefits to their beneficiaries and that the 1992 Plan only provides a backstop for such benefits.  Such primary obligation continues as long as the Last

7

Signatory Operator or any "related person" remains "in business" within the meaning of the Coal Act. 26 U.S.C. § 9711(a), (b), and (c).

36.     Consol and CNX are related persons to the Sold Subsidiaries and remain in business within the meaning of the Coal Act. Thus, Consol and CNX remain obligated to provide benefits to eligible retirees and beneficiaries of the Sold Subsidiaries in the first instance.

37.     Consol has denied that it has any Coal Act liability or obligation stemming from the transfer of the retirees of the Sold Subsidiaries to the 1992 Plan, and CNX has failed to acknowledge its own liability or obligation under the statute. There is little prospect that, lacking judicial compulsion and a declaration of rights and obligations, Consol and/or CNX will satisfy their obligations under the Coal Act to its retirees and beneficiaries or to the 1992 Plan, which is currently providing benefits to this aging population.

38.     Accordingly, the 1992 Plan seeks a declaration that Consol and CNX are obligated to provide benefits to eligible retirees and beneficiaries attributable to the Sold Subsidiaries under Section 9711 of the Coal Act.

## COUNT II
### For a Declaration that Consol and CNX Are Obligated to Post Security

39.     The allegations in paragraphs 1 – 38 are reasserted as if fully rewritten.

40.     Under the Coal Act, each 1988 Last Signatory Operator is required to finance the benefits provided under the 1992 Plan through several mechanisms, including the provision of security under Section 9712(d)(1)(B) of the Coal Act, 26 U.S.C. § 9712(d)(1)(B).

41.     The Sold Subsidiaries were 1988 Last Signatory Operators and Consol and CNX are related persons to the Sold Subsidiaries. Therefore, Consol and CNX are jointly and severally liable for the Sold Subsidiaries obligations.

42.     As set forth in Section 9712(d)(1)(B) of the Coal Act, Article XI(4) of the UMWA 1992 Benefit Plan Agreement and Declaration of Trust, and the rules adopted by the 1992 Plan Trustees, all liable operators must post security for the benefit of the 1992 Plan against the event that the operator fails or ceases to provide the requisite benefits under Section 9711 of the Coal Act, 26 U.S.C. § 9711, or against the event that beneficiaries attributable to such operator are enrolled in the 1992 Plan.

43.     Such security must be posted each year as a conforming bond, conforming letter of credit, or a conforming cash escrow.

44.     The amount of the security required to be provided by an operator subject to Section 9712 of the Coal Act is a dollar amount representing the projected average cost to provide benefits to each individual 1992 Plan beneficiary as determined each year by the Trustees of the 1992 Plan, multiplied by the number of beneficiaries eligible or potentially eligible for the 1992 Plan attributable to the operator or its related persons. For 2020, the security was required to be $9,417 times the number of attributable beneficiaries.

45.     Based on the estimated 2,159 eligible and potentially eligible beneficiaries thus counted attributed to Consol and CNX as related persons to the Sold Subsidiaries, its required security for 2020 is $20,331,303.

46.     Consol and CNX have not posted the security as required by the Coal Act. Indeed, Consol has denied that it has any Coal Act liability or obligation stemming from the transfer of the retirees of the Sold Subsidiaries to the 1992 Plan, and CNX has failed to acknowledge its own liability or obligation under the statute. There is little prospect that, lacking judicial compulsion and a declaration of rights and obligations, Consol and CNX will post the security, even where Defendants are currently failing to provide benefits under Section 9711 of the Coal Act.

Accordingly, the 1992 Plan seeks a declaration that Consol and CNX Resources are jointly and severally obligated to post the security as required by the Coal Act.

**Count III**

**<u>For a Declaration that Consol and CNX Are Obligated to Pay Premiums for<br>the Interim Period</u>**

47.     The allegations in paragraphs 1 through 46 are reasserted as if fully rewritten.

48.     Under Sections 9712(d)(1)(A), (d)(4) of the Coal Act, Last Signatory Operators and their related persons such as Consol and CNX are required to pay a monthly per beneficiary premium to the 1992 Plan based on the attributable beneficiaries receiving benefits from the 1992 Plan.  26 U.S.C. § 9712(d)(1)(A), (d)(4).

49.     Accordingly, the 1992 Plan seeks a declaration that the defendants are liable for the per beneficiary premiums accruing from May 1, 2020 through such date as Consol and/or CNX enroll the attributable beneficiaries in their own section 9711 Plan and provide the required benefits, plus interest accruing from the date each monthly premium is due, liquidated damages and attorney fees under Section 9721(2) of the Coal Act, referencing Section 4301 of ERISA, 29 U.S.C. § 1451.

   **WHEREFORE**, the Plaintiff 1992 Plan prays for the following relief:

   a)     A declaration that Defendants are obligated to enroll the eligible retirees and beneficiaries attributed to its Sold Subsidiaries in a Section 9711 plan;

   b)     A declaration that Defendants are liable for posting security in the required amount under Section 9712(d)(1)(B);

   c)     A declaration that the Defendants are liable to pay per beneficiary premiums under Section 9712(d)(1)(A) of the Coal Act, 26 USC Section 9712(d)(1)(A), plus interest, liquidated damages and attorney fees and other costs and disbursements in this action under Section 9721(2)

of the Coal Act, 26 USC Section 9721(2), and Sections 502(g)(2)(E), 515 and 4301(b) of ERISA,

29 U.S.C. § 1132(g)(2)(E), 1145 and 1451;

      d)      That the Court retain jurisdiction of this case pending compliance with its orders;

and

      For such other and further relief as the Court may deem just.

Respectfully submitted,

|  |  |
|---|---|
| FILIBERTO AGUSTI (D.C. Bar No. 270058) | /s/_____<br>JOHN R. MOONEY (DC Bar No. 375886) |
| JOSHUA TAYLOR (D.C. Bar No. 486205) | PAUL A. GREEN (D.C. Bar No. 383588) |
| STEPTOE & JOHNSON LLP | DIANA M. BARDES (D.C. Bar No. 1010075) |
| 1330 Connecticut Avenue, NW | MOONEY, GREEN, SAINDON, MURPHY |
| Washington, DC  20036 |    & WELCH, P.C. |
| (202) 429-6428 / Fax (202) 429-3902 | 1920 L Street, N.W. Suite 400 |
| E-Mail: fagusti@steptoe.com | Washington, D.C. 20036 |
| jrtaylor@steptoe.com | Telephone: (202) 783-0010 |
|  | Email: jmooney@mooneygreen.com |
|  | pgreen@mooneygreen.com |
|  | dbardes@mooneygreen.com |

GLENDA S. FINCH (D.C. Bar No. 418206)
General Counsel
UMWA HEALTH & RETIREMENT FUNDS
Office of the General Counsel
2121 K Street, N.W., Suite 350
Washington, D.C. 20037
Telephone: (202) 521-2238
Email: gfinch@umwafunds.org

*Attorneys for Plaintiffs*
*Trustees of the UMWA 1992 Benefit Plan*