# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL H. HOLLAND, JOSEPH R. RESCHINI, and CARLO TARLEY, as Trustees Of the UNIITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN, 2121 K. Street, N.W. Suite 350 Washington D.C. 20037 | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:20-cv-1148 ) |
| CONSOL ENERGY INC., CONSOL MARINE TERMINALS LLC, CONSOL ENERGY SALES COMPANY LLC, CONSOL OF CANADA LLC, CONSOL OF KENTUCKY LLC, CONSOL OF PENNSYLVANIA COAL COMPANY LLC, and WOLFPEN KNOB DEVELOPMENT COMPANY LLC 1000 Consol Energy Drive Canonsburg, PA 15317 | ) ) ) ) ) ) ) ) ) ) ) |
| And | ) ) |
| CNX RESOURCES CORPORATION 1000 Consol Energy Drive, Suite 400 Canonsburg, PA  15317 | ) ) ) ) |
| Defendants. | ) |

**CONSOL ENERGY INC.; CONSOL MARINE TERMINALS LLC; CONSOL ENERGY SALES COMPANY LLC; CONSOL OF CANADA LLC; CONSOL OF KENTUCKY LLC; CONSOL OF PENNSYLVANIA COAL COMPANY LLC; AND WOLFPEN KNOB DEVELOPMENT COMPANY LLC'S MEMORANDUM IN SUPPORT OF THEIR AMENDED MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants CONSOL Energy Inc., CONSOL Marine Terminals LLC, CONSOL Energy

Sales Company LLC, CONSOL of Canada LLC, CONSOL of Kentucky LLC, CONSOL of

Pennsylvania Coal Company LLC, and Wolfpen Knob Development Company LLC,

("CONSOL"), submit the following memorandum of law in support of their amended motion to dismiss Plaintiffs' Second Amended Complaint.  In an effort to salvage their claims in this litigation, Plaintiffs added six new subsidiary defendants, attempting to create a convoluted chain of liability under the Coal Act[1] by linking together various entities that have no relationship to the 1992 Benefit Plan.  However, Plaintiffs' new theory only underscores the fact that CONSOL is not a "related person" for purposes of liability under the Coal Act for any of the counts in the Second Amended Complaint.  Plaintiffs' conclusory statements fail to satisfy the required pleading standards.

Moreover, Plaintiffs' claims are not yet ripe because, as described in Defendant CNX Resources Corporation's ("CNX") brief in support of its motion to dismiss (Dkt. 38), litigation regarding the relevant bankruptcy settlement is still pending.  The outcome of that litigation will affect—and may undermine—Plaintiffs' claims for declaratory judgment in this case.  As such, this Court should permit that litigation to resolve before addressing Plaintiffs' claims here. Additionally, and as described in CNX's brief in support of its motion to dismiss, Plaintiffs lack a private right of action under the Coal Act, and should have any relief they claim be reduced, depending on the bankruptcy settlement outcome.  (*Id.*)  Accordingly, the Second Amended Complaint should be dismissed in its entirety.

## BACKGROUND

This lawsuit arises out of bankruptcy proceedings involving Murray Energy Corporation ("Murray Energy").  *See In re Murray Energy Holdings Co.*, Case No. 2:19-bk-5688 (Bankr. S.D. Ohio).  As part of that proceeding, the United Mine Workers of America ("UMWA") 1992 Benefit

---

[1] The Coal Industry Retiree Health Benefits Act of 1992, 26 U.S.C. § 9701 *et seq.*

Plan Trustees agreed to a settlement with Murray Energy under which retirees for six coal companies owned by Murray Energy were enrolled in the 1992 Benefit Plan. (*See* Dkt. 32, Second Amended Complaint ("SAC") ¶ 57.)[2] Two of those companies, Consolidation Coal Company and McElroy Coal Company (the "Signatory Subsidiaries"), were previously owned by a predecessor company to CNX and were sold in 2013, years before CONSOL was formed. (SAC ¶ 30.)

The Murray settlement was approved over the objections of CONSOL, which challenged the unusual and unprecedented nature by which the 1992 Benefit Plan absolved Murray Energy of these liabilities.[3] Plaintiffs now seek to transfer the liabilities for the Signatory Subsidiaries to CONSOL and CNX, as well as to the six newly added defendants in this case: CONSOL Marine Terminals LLC, CONSOL Energy Sales Company LLC, CONSOL of Canada LLC, CONSOL of Kentucky LLC, CONSOL of Pennsylvania Coal Company LLC, and Wolfpen Knob Development Company LLC.

The premise of Plaintiffs' claims is that Defendants are "related persons" under the Coal Act to the two Signatory Subsidiaries that were sold to Murray Energy in 2013. (SAC ¶¶ 53–55.) As is relevant for purposes of this motion, "related person" status "shall be determined as of July 20, 1992." 26 U.S.C. § 9701(c)(2)(B).

---

[2] Because this settlement is referred to in the Plaintiffs' Second Amended Complaint, and is otherwise a matter of public record, it may be considered by this Court. *Papasan v. Allain*, 478 U.S. 265, 269 n. 1 (1986) (courts may take "notice of items in the public record" when deciding a motion to dismiss).

[3] *See In re Murray Energy*, Case No. 2:19-bk-5688, Dkt. 1338 (CONSOL Energy Inc. and Affiliates' Objection to the Debtors' Motion for Entry of an Order (I) Approving the Settlement Between the Debtors, the Retirees Committee, and the United Mine Workers of America 1992 Benefit Plan and (II) Granting Related Relief) (filed Apr. 23, 2020). Should this case proceed beyond the pleading stage, the facts surrounding this settlement, and various facts leading to that settlement, will likely be a prominent focus of this litigation. This is because of the settlement's direct relation to the liabilities Plaintiffs now seek to impose here.

## I.     The Parties

Plaintiffs are Trustees of the UMWA 1992 Benefit Plan (the "1992 Plan").  (SAC ¶ 2.)
The 1992 Plan was created by the Coal Act in order to provide medical benefits for certain retired
coal miners.  (*Id*. ¶¶ 3–4, 31–32, 36.)

Before November 29, 2017, Defendants CONSOL and CNX were part of the same
corporation under the name CONSOL Energy Inc. (hereafter, "Old CONSOL").  (*Id*. ¶ 5.)
Defendant CONSOL was initially formed as CONSOL Mining Corp. in June 2017.  (*Id.* ¶ 27.)
Then, effective November 29, 2017, Old CONSOL spun off CONSOL Mining.  (*Id.* ¶ 29.)  On the
same date, Old CONSOL changed its name to CNX Resources Corporation, and CONSOL Mining
Corp. changed its name to CONSOL Energy Inc.  (*Id.* ¶ 15, 29.)  CONSOL Energy Inc. is the
CONSOL Defendant in this lawsuit.  (*Id.* ¶ 6.)  CNX, is the remaining post-spinoff operation of
Old CONSOL.  (*Id.* ¶ 5.)

Before the CONSOL Mining spin-off described above, Old CONSOL entered into a
December 2013 stock purchase agreement with Murray Energy.  Under that agreement, Old
CONSOL sold to one of Murray Energy's subsidiaries six of its subsidiaries: Consolidation Coal
Company, McElroy Coal Company, Southern Ohio Coal Company, Central Ohio Coal Company,
Keystone Coal Mining Corporation, and Eighty-Four Mining Company (the "Sold Subsidiaries").
(*Id.* ¶ 53.)  Plaintiffs allege that Defendants are liable for the Coal Act liabilities of two of the Sold
Subsidiaries, the Signatory Subsidiaries, as "related persons" to them.  (*Id*. ¶¶ 53, 55, 65.)  Plaintiffs
do not allege that Defendants have any Coal Act obligations for the remaining four Sold
Subsidiaries.

## II.      Events Giving Rise to this Lawsuit

On October 29, 2019, Murray Energy and various affiliated debtors, including the six Sold Subsidiaries, filed for bankruptcy under Chapter 11 of the Bankruptcy Code.  (*Id.* ¶ 56.)  In the course of those proceedings, Murray Energy entered into an April 14, 2020 settlement with, among other parties, the 1992 Plan.  (*Id.* ¶ 57.)   CONSOL objected to the settlement, given the circumstances under which the settlement occurred, as well as the nature by which the settlement was presented for bankruptcy court approval.[4]  (*In re Murray Energy*, Case No. 2:19-bk-5688, Dkt. 1338.)  The bankruptcy court nonetheless approved the settlement.  (*Id.* Dkt. 1491.)  Under the settlement's terms, Murray was relieved of its obligations under the 1992 Plan, including for retirees of the Sold Subsidiaries.   (*Id.*)

On May 1, 2020, Murray Energy retirees and beneficiaries were enrolled in the 1992 Plan. (*Id.* ¶ 59.)  The next day, Plaintiffs filed this suit, claiming that CONSOL and CNX are responsible under the Coal Act as "related persons" for the liabilities that the 1992 Plan claimed are attributable to the Sold Subsidiaries.  (Dkt. 1.)  Plaintiffs thereafter filed their Amended Complaint on May 20, 2020.  (Dkt. 5.)  CONSOL and CNX moved to dismiss the Amended Complaint, arguing that it failed to state a claim that they were "related persons" under the Coal Act or responsible for the Coal Act liabilities of the Sold Subsidiaries.  (Dkt. 29.)  Plaintiffs sought, and were granted, leave to file a Second Amended Complaint.  (Dkt. 30.)

Plaintiffs' Second Amended Complaint makes three primary changes from the Amended Complaint.  (Dkt. 32.)  First, Plaintiffs added six new defendants that were allegedly subsidiaries

---

[4] An appeal of the bankruptcy court's approval of the settlement is currently pending in the Sixth Circuit Court of Appeals.  *In re: Murray Energy Holdings*, Case No. 20-8017 (6th Cir. filed May 14, 2020).

of Old CONSOL on July 20, 1992 (the "New Subsidiary Defendants").  (*Id*. ¶ 16.)  Second, Plaintiffs allege that Defendants are "related persons" for the purposes of Coal Act obligations for only the two Signatory Subsidiaries.  (*Id*. ¶ 65.)  Third, Plaintiffs attempt to allege a new theory of liability based upon the New Subsidiary Defendants' relation to Old CONSOL on July 20, 1992, despite the fact that none of the New Subsidiary Defendants have any relation to the 1992 Plan. (*Id.* ¶¶ 49–50.)  According to Plaintiffs' new theory, the New Subsidiary Defendants were in a "controlled group" of corporations with the Signatory Subsidiaries on July 20, 1992 (*id.* ¶¶ 26, 30), and as a result of that "control group" relationship, all of the Defendants are liable for the Coal Act liabilities of the Signatory Subsidiaries (*id.* ¶ 34).

Count I seeks a declaration that Defendants are liable under the Coal Act for the Signatory Subsidiaries as "related persons."  (*Id*. ¶¶ 63–67.)  Count II seeks a declaration that Defendants are required to post security for the benefit of the 1992 Plan with respect to such individuals.  (*Id*. ¶¶ 68–75.)  Finally, Count III seeks a declaration that Defendants are responsible for monthly premiums to the 1992 Plan for such individuals.  (*Id*. ¶¶ 76–78.)

## **ARGUMENT**

### I.    **Applicable Legal Standards**

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint." *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).  Thus, to survive this motion, Plaintiffs' Second Amended Complaint must have "facial plausibility," which means it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although the Court must construe Plaintiffs' Second Amended Complaint in their favor, "the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga*, 677 F.3d at 476.   "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . do not suffice.'"  *Beaulieu v. Barr*, No. 15-cv-896, 2019 WL 5579968, at *1 (D.D.C. Oct. 29, 2019) (quoting *Iqbal*, 556 U.S. at 678).  *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Because Plaintiffs' Second Amended Complaint cannot withstand scrutiny under the foregoing standard, it should be dismissed in its entirety.

## II.   Plaintiffs' Claims Should be Dismissed or Stayed for the Reasons CNX Explained in Its Motion to Dismiss the Second Amended Complaint.

In its motion to dismiss the Second Amended Complaint, CNX argues that the Trustees' purported claims are not ripe because they depend on the outcome of the currently-pending appeal of the bankruptcy settlement underlying Plaintiffs' claims.  (Dkt. 38, at 8–13.)  CNX also argues that Plaintiffs lack a private right of action under the Coal Act to bring this case.  (*Id.* at 13–17.)  Finally, CNX argues that any relief Plaintiffs do receive should be reduced by any consideration that they will receive in the bankruptcy settlement.  (*Id.* 18–19.)  For the reasons explained in CNX's motion, CONSOL incorporates those same arguments here.  *See, e.g.*, *Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d 113, 123 (D.D.C. 2017) (joining another

party's motion to dismiss "is generally permitted under the Federal Rules"); *Grissom v. D.C.*, 853 F. Supp. 2d 118, 121 (D.D.C. 2012) (permitting joining a motion to dismiss).

### III.    Plaintiffs' Second Amended Complaint Alleges No Facts Showing CONSOL is a "Related Person" to the Signatory Subsidiaries Allegedly Responsible for the Coal Act Liabilities at Issue in this Case.

Each of Plaintiffs' claims proceeds from the contention that CONSOL is a "related person" under the Coal Act to the two Signatory Subsidiaries.  (SAC ¶ 65 (Count I) ("Defendants are related persons to the Signatory Subsidiaries and . . . remain obligated to provide benefits to eligible retirees and beneficiaries of the Signatory Subsidiaries); ¶ 70 (Count II) ("Defendants are related persons to the Signatory Subsidiaries [and] . . . are jointly and severally liable for their obligations"); ¶ 77 (Count III) ("last signatory operators and their related persons, such as Defendants, are required to pay a monthly per beneficiary premium to the 1992 Plan.").)

Given these claims, under the governing legal standards, Plaintiffs are obligated to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hettinga*, 677 F.3d at 476 (quoting *Iqbal*, 556 U.S. at 677).  But, as with the Amended Complaint, all Plaintiffs allege here are "legal conclusions cast as factual allegations." *Hettinga*, 677 F.3d at 476.

Specifically, Plaintiffs allege that Old CONSOL and the New Subsidiary Defendants were part of the same "controlled group" of corporations as the two Signatory Subsidiaries on July 20, 1992.  (Dkt. 32, SAC ¶¶ 35, 41–48.)  As it relates to CONSOL, Plaintiffs allege that, through the spin-off in 2017, CONSOL became the "direct or indirect owner of the [New Subsidiary Defendants], which are related persons" to the Signatory Subsidiaries.  (SAC ¶ 49.)  Plaintiffs allege that, as a result, CONSOL became the "successor in interest to the [New Subsidiary Defendants] within the meaning of the Coal Act" because CONSOL "retained the rights and property" of the New Subsidiary Defendants.  (SAC ¶ 49.)  Alternatively, Plaintiffs allege that

CONSOL became the successor in interest to the New Subsidiary Defendants because CONSOL "was formed from the assets of the [New Subsidiary Defendants], which resulted in commingled ownership of the underlying property" of the New Subsidiary Defendants.  (*Id.* ¶ 50.)

None of these conclusory allegations, however, states a claim that can withstand a Rule 12(b)(6) motion.  *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. S&F Mgmt. Co., LLC*, No. 17-cv-01737, 2018 WL 5044249, at *5 (D.D.C. Aug. 16, 2018), *report and recommendation adopted*, No. 17-cv-1737, 2018 WL 6788727 (D.D.C. Oct. 22, 2018) (rejecting allegations that two separate entities were so interrelated as to be jointly and severally liable for certain pension obligations as conclusory, and granting motion to dismiss).

*First*, CONSOL had no relation to the Signatory Subsidiaries or any of the New Subsidiary Defendants as of July 20, 1992.  Accordingly, CONSOL was not a "related person" to the Signatory Subsidiaries as of July 20, 1992.  This is because, as outlined above, CONSOL was not formed until June 2017, and did not become a stand-alone corporate entity until November 2017.[5] Those undisputed points render Plaintiffs' claim against CONSOL factually untenable, because Coal Act liability "shall be determined" as of July 20, 1992.  26 U.S.C. § 9701(c)(2)(B).  *See also Wheeling-Pittsburgh Steel Corp. v. Barnhart*, 229 F. Supp. 2d 539, 553 (N.D. W. Va. 2002) ("in determining related person status, the pertinent date is July 20, 1992").

*Second*, Plaintiffs allege no facts demonstrating that CONSOL is a successor interest to a "related person" to the Signatory Subsidiaries within the meaning of the Coal Act.  (SAC ¶ 49.) Plaintiffs merely declare, in wholly conclusory fashion, that CONSOL "became the direct or

---

[5] As also noted above, these facts may be properly considered on a Rule 12(b)(6) motion because they relate to matters referred to in the Second Amended Complaint and are otherwise matters of public record.  *Papasan*, 478 U.S. at 269 n. 1.

indirect owner of the [New Subsidiary Defendants]," and thus the successor in interest to the New Subsidiary Defendants, which Plaintiffs' allege are "related persons." (*Id.*) But none of these allegations provide any facts showing that (i) the New Subsidiary Defendants met the definition of a "related person" or that (ii) CONSOL met the definition of a "successor in interest" to a "related person" as of July 20, 1992, a necessary predicate for claiming Coal Act liability. 26 U.S.C. § 9701(c)(2). *See also Holland v. Williams Mountain Coal Co.*, 256 F.3d 819, 826 (D.C. Cir. 2001) (holding that defendants were not a successor in interest under the Coal Act); *UMWA 1992 Ben. Plan v. Leckie Smokeless Coal Co.*, 201 B.R. 163, 171 (S.D. W. Va.), *aff'd sub nom. In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996) (same). Moreover, Plaintiffs do not specifically allege that any of the New Subsidiary Defendants have any prior relationship to the UMWA or the 1992 Plan.[6] As such, Plaintiffs fail to allege any facts tying these various entities together in a manner that would create Coal Act liability for CONSOL.

*Finally*, even if CONSOL "was created out of the assets of CNX" or the New Subsidiary Defendants, Plaintiffs allege no facts demonstrating any relationship between whatever those assets were and the Signatory Subsidiaries. (SAC ¶¶ 30, 50.) They simply state without support that a relationship exists between CONSOL, the New Subsidiary Defendants, and the Signatory Subsidiaries. (*Id.*; *see also e.g., id.* ¶ 52 ("CNX *and/or* Consol *and/or* subsidiaries of CNX *and/or* Consol maintained and administered a Section 9711 Plan for eligible retirees and beneficiaries of the Signatory Subsidiaries . . . through at least December 2013" (emphasis added)).) That is not enough to state a claim.

---

[6] The facts will show that none of the New Subsidiary Defendants had collective bargaining agreements with the United Mine Workers of America or the 1992 Plan.

Given these pleading deficiencies, Plaintiffs' attempt to state any claim against CONSOL is based on nothing more than the conclusory legal allegation that CONSOL is a "related person." Plaintiffs' Second Amended Complaint sets forth no facts that would make that assertion plausible. *Hettinga*, 677 F.3d at 476.

Other courts faced with similar allegations have had no trouble dismissing similarly conclusory claims. For example, in *Kelleher v. Dream Catcher, LLC*, 221 F. Supp. 3d 157 (D.D.C. 2016), the court dismissed the plaintiff's alter ego claim where that claim was supported by the sole assertion that the entities shared the same address. *Id*. at 159. That fact, the court found, "without more, does not 'nudge' Plaintiff's alter ego theory of liability 'across the line from conceivable to plausible.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). *See also Gavin v. Dep't of Air Force*, 324 F. Supp. 3d 147, 151, n. 1 (D.D.C. 2018) (conclusory allegation that plaintiff exhausted administrative remedies insufficient to state a claim where plaintiff failed to identify the final agency action being challenged); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 111–12 (D.D.C. 2010) (plaintiff's claim based on agency theory failed where conclusory allegation that one party was "under complete control" of defendant was "nothing more than [a] formulaic recitation of an element of agency liability . . . not entitled to be assumed true." (quoting *Iqbal*, at 556 U.S. at 681 (alterations omitted))).

Stripping away Plaintiffs' conclusory allegations reveals no factual support for the central tenet of all of their claims against CONSOL. Viewed under the applicable legal standard, these deficiencies must lead to the dismissal of Plaintiffs' Second Amended Complaint for failure to state a claim.

**CONCLUSION**

For the foregoing reasons, CONSOL respectfully requests that Plaintiffs' Second Amended Complaint be dismissed in its entirety.

Dated: September 21, 2020                    Respectfully submitted,

CONSOL ENEREGY INC., CONSOL MARINE TERMINALS LLC, CONSOL ENERGY SALES COMPANY LLC, CONSOL OF CANADA LLC, CONSOL OF KENTUCKY LLC, CONSOL OF PENNSYLVANIA COAL COMPANY LLC, and WOLFPEN KNOB DEVELOPMENT COMPANY LLC

By: */s/ Joseph J. Torres*
Joseph J. Torres (*admitted pro hac vice*)
Alexis E. Bates (*admitted pro hac vice*)
JENNER & BLOCK LLP
335 North Clark Street
Chicago, IL 60654-3456
(312) 840-8685
JTorres@jenner.com
ABates@jenner.com

Kali N. Bracey (#458965)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, DC 20001-4412
(202) 639-6867
KBracey@jenner.com